UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

CYNTHIA A. DIXON :

VS : C.A. NO.: 06-443

AMERICAN MONEY CENTERS :
INC. :

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT, AMERICAN MONEY CENTERS INC.'S, MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION:

Plaintiff, Cynthia A. Dixon, has brought this lawsuit seeking damages on behalf of herself and an alleged class of residents of Rhode Island, Massachusetts, Maine, and New Hampshire for willful violation of the Fair Credit Reporting Act 15 U.S.C. 1681 (hereinafter "FCRA") arising from an offer of credit mailed to the plaintiff attached as Exhibit A to the complaint. The document mailed from American Money Centers Inc. extends an offer to finance a mortgage to include the consolidation of other debt into one payment. American's offer to Dixon constitutes a firm offer of credit under the plain language of the FCRA.

Plaintiff, however, claims that the offers were not firm offers of credit within the meaning of the FCRA, in particular 1681 A(l) and therefore, American lacked a permissible purpose under 15 U.S.C. 1681B(c)(1)(b)(1) for prescreening the plaintiff's consumer credit data without her consent. In particular, plaintiff alleges that the offer of credit she received from American was not a firm offer within the meaning of the FCRA because they were a sham and lacking in material terms. The plaintiff has not alleged negligence or actual damages but rather alleges a

willful violation of the FCRA 1681(b) so that she may obtain statutory damages on her behalf and on behalf of the alleged class in an amount ranging from $100.00 to $1,000.00 each pursuant to 15 U.S.C. 168(n). As the document complained of is a firm offer of credit under the FCRA, American's motion for summary judgment should be granted.

## II. <u>RELEVANT FACTS</u>:

The court will require only limited facts in order to make the determination that the letter from American, received by the plaintiff, is a firm offer of credit within the meaning included in the FCRA. The plaintiff has alleged that the letter is a sham, excessively vague and lacking in terms. A review of the contents of the letter attached to the plaintiffs complaint as Exhibit A show the offer, terms and conditions available to the recipient.

### A. <u>Allegations of the Plaintiff in the Complaint</u>:

The paragraphs of the Dixon's Complaint (Exhibit B) relevant to an analysis of American's letter (Exhibit A) include:

10. During the two years preceding the filing of this action, Plaintiff Cynthia A. Dixon received the document attached as Exhibit A via the United states mail.

11. Exhibit A states: "This 'prescreened' offer of credit is based on information in your credit report…"

27. The FCRA, 15 U.S.C 1681 b provides it is permissible to obtain or use a consumer report on a consumer only with the written consent of the consumer or for certain "permissible purposes", such as the extension of credit to, or review or collection of an account of, the consumer, employment purposes, the underwriting

of insurance, or in connection with a business transaction that is initiated by the consumer, or to make a "firm offer of credit."

31. The sending of Exhibit A does not qualify as a firm offer of credit within the meaning of the FCRA, justifying the [obtention] of a consumer report on a consumer, in that the purported offer (if one exists at all) is a sham, excessively vague and totally lacking in terms. It has no value beyond a solicitation for business, the sending of which is not a permissible purpose for accessing a consumer report. Cole v. U.S. Capital, Inc., 389 F3d 719 (7th Cir.2004).

**B. The terms and conditions of the offer from American**:

Exhibit A as attached to the complaint is a two-page document from American Money Centers Inc. sent on August 17, 2006, which the plaintiff alleges she received within a period of two years prior to filing the complaint. The document is essentially an offer to refinance a primary mortgage to include the consolidation of outstanding debt (See Exhibit A, Page 1). The loan being offered is a 30-year loan. The loan was for a fixed rate. The APR on the loan was 6.25% (See Exhibit A, Page 2).

The first page of the document contains a chart to assist the recipient in comparing their current situation with the proposed loan. In addition, it offers the ability to skip up to two mortgage payments (Page 1, lower left) and a $300.00 credit at closing toward the required appraisal (Page 2). The document clearly states that the recipient is pre-approved for the loan in question (Page 1). The document does not limit or place any restrictions on how the recipient may use the proceeds of the loan noting "extra cash for any reason." (See Exhibit A, Page 1).

On page two the document does state that loan approval is subject to the verification of homeownership including acceptable title and equity and verification of income and credit (See Exhibit A, Page 2). The letter contains a "payment chart" on the lower right hand corner of page one to assist the recipient in understanding how a refinance might affect monthly payments (Page 1). The letter also provides the recipient with phone numbers and website addresses if a consumer were interested in obtaining more information from American in regard to the terms of the offer (Page 2).

**III. STANDARD OF REVIEW**:

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). Darr v. Muratore, 8 F.3d 854, 859 (1st Cir., 1993).

The opponent of a properly focused Rule 56 motion must demonstrate, by competent evidence, the existence of a triable issue which is both genuine and material to its claim. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 91 L.Ed 2d 202, 106 S. Ct. 2505 (1986); Garside v. Osco Drug, Inc., 895 F.2d 45, 48 (1st Cir. 1990). "In this context, 'genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party." United States v. One Parcel of Real Property, Etc., (Great Harbor Neck), 960 F.2d 200, 204 (1st Cir. 1992). "In the same context, 'material' means that the fact is one susceptible of altering the outcome of the litigation."

Rivera-Muriente v. Agosto-Alicea, 959 F.2d 349, 352 (1st Cir. 1992). In re Newport Plaza Assoc., L.P., 985 F.2d 640, 643 (1st Cir., 1993).

A genuine issue of material fact does not spring into being simply because a litigant claims that one exists. Neither wishful thinking nor "mere promises to produce admissible evidence at trial," Garside, 895 F.2d at 49, nor conclusory responses unsupported by evidence, Ayer v. United States, 902 F.2d 1038, 1044-45 (1st Cir. 1990), will serve to defeat a properly focused Rule 56 motion. Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir., 1990).

The role of a summary judgment is to look behind the façade erected by the pleadings and assay the party's proof in order to determine whether a trial will serve any useful purpose. Feinstein v. Brown, 432 F.Supp. 2d 258, 262 (D.R.I. 2006).

**IV. DISCUSSION**:

The offer of credit from American to the plaintiff, as documented in Exhibit A to the complaint, satisfies the FCRA because on its face 1) it offers a mortgage loan which is a legitimate credit product; 2) does not tie the credit product to the purchase of any other product or service; 3) the plaintiff received the document and the offer stated in the document, as a result of information in a consumer report that indicated she qualified based on pre-selected criteria of her home ownership and credit worthiness; and 4) the only conditions placed on the offer were the recipients continued qualification based on ownership interest in her home, income, and credit. The document describes the product offer, a 30-year term, fixed interest rate loan, and provides material terms including the APR. In

addition, it provides information by way of example. The document and the offer contained therein firmly fit within the definition of firm offer of credit within the FCRA.

The plaintiff would have the court look beyond the definition of firm offer of credit contained within the FCRA. The plaintiff relies heavily on the single decision from the 7th Circuit interpreting the FCRA in Cole v. U.S. Capital, 389 F.3rd 719 7th Cir. (2004). The basis of the lawsuit in Cole is factually distinct from the matters presently before the court.

Although the Cole decision is not presidential or binding on this court, it is interesting to note that the so-called Cole "value" test has recently been applied to an offer for a mortgage based loan within the 7th Circuit and the court in Cavin v. Home Loan Center Inc., 2007 U.S. Dist. LEXIS 2713, found that an offer for a mortgage based loan can be a firm offer of credit and are not a sham even if they do not contain every single loan term, noting "we do not read Cole or Perry to require disclosure of every single loan term for an offer to be considered firm. Such a requirement poses particular difficulty in the case of a mortgage, because unlike a credit card, a mortgage is tailored to the individual consumer depending on such factors as how much he or she wishes to borrow, his or her current income, and the value of the property offered as collateral; all of this information would have to be provided by the individual borrower." *Id*. at 22 (emphasis added).

Other District Courts faced with claims from plaintiffs relying on Cole have reached similar results, finding that mortgage based loans may be different from other types of credit and should be evaluated in context.

**A. The American letter meets the requirements of a FCRA firm offer of credit**:

**1. The statutory definition of firm offer of credit.**

15 U.S.C. 1681B(c)(1)(b)(i) allows for the prescreening of consumer information in connection with any credit or insurance transaction that is not initiated by the consumer only if …the transaction consists of a firm offer of credit in 15 U.S.C. 1681A(l), the FCRA defines firm offer of credit as:

> "Any offer of credit…to a consumer that will be honored if the consumer is determined, based on the information in the consumer report on the consumer, to meet the specific criteria used to select the consumer for the offer, except that the offer may be further conditioned on one or more of the following:
>
> 1. The consumer being determined based on the information in the consumer's application for the credit or insurance to meet specific criteria bearing on the creditworthiness or insurability as applicable that are established.
>
> a. Before selection of the consumer for the offer and
> b. For the purpose of determining whether to extend credit or insurance pursuant to the offer.
>
> 2. Verification.
>
> a. That the consumer continues to meet the specific criteria used to select the consumer for the offer, by using information in a consumer report on the consumer, information in the consumer's application for the credit or insurance or other information bearing on the credit worthiness or insurability of the consumer; or
> b. Of the information in the consumer's application for credit or insurance to determine that the consumer meets the specific criteria bearing on the credit worthiness or insurability.

3. The consumer furnishing any collateral that as a requirement for the extension of the credit or insurance that was:

a. Established before the selection of the consumer for the offer of credit or insurance and
b. Disclosed to the consumer in the offer of credit or insurance.

15 U.S.C. 1681A(1).

**2. A firm offer is based on limited information and the information is subject to verification.**

When a lender extends a firm offer of credit, it is only permitted to know the consumer's name and address, non unique identifiers to be used solely for the purpose of verifying the identity of the consumer, and other information pertaining to a consumer that does not identify the relationship or experience of the consumer with respect to a particular credit or other entity. 15 U.S.C. 1681B(c)(2). A lender extending a firm offer of credit has only limited information.

A firm offer of credit is allowed to be subject to verification as noted in 15 U.S.C. 1681A(l) (any offer of credit or insurance to a consumer that will be honored if the consumer is determined based upon information in a consumer report on a consumer to meet specific criteria used to select the consumer for the offer). In interpreting the FCRA, a court has noted that a "firm offer of credit really means a firm offer if you meet certain criteria." Kennedy v. Chase Manhattan Bank USA, N.A., 369 F.3rd 833, 831 5th Cir. (2004). A United States District Court has noted "an offer of credit to a particular consumer is firm only if the consumer actually meets and continues to meet the criteria which form the basis of the offer. It is an offer made in the present based on information known by the offerer

subject to later verification." Soroka v. Homeowners' Loan Corp., 2006 U.S. Dist. LEXIS 38847 Md. (Fla. June 12, 2006).

**3. American's offer is a firm offer of credit within the meaning of FCRA.**

On its face, the letter sent to plaintiff, Cynthia Dixon, which is the basis for her complaint was a firm offer of credit based upon the requirements of the FCRA. The FCRA requires that a firm offer of credit be an offer of credit based on pre-selected criteria to a specific consumer in that the offer be conditioned only on the factors set out in the statute.

Here American sends a two-page letter addressed to Cynthia Dixon indicated that she has been pre-approved for a loan based on the equity in her house and her payment history. The second page indicates that it is "a prescreened offer of credit based on information in your credit report indicating you meet certain criteria." (See Exhibit A, Page 2). The offer of credit is a mortgage based loan for a 30-year period, at a fixed rate, with an APR of 6.25% (See Exhibit A, Page 2). There is no allegation that the letter is a general mailer to a general population.

The offer made in the letter is subject to verification. The second page of the letter states "loan approval subject to borrower qualification, verification of home ownership, acceptable title, equity, income, and credit." (See Exhibit A, Page 2). In addition, the letter states "this offer is not guaranteed if you do not meet our criteria (including providing acceptable property collateral)." (See Exhibit A, Page 2). The FCRA notes that an offer may be conditioned on one or more of the following (1) consumer meets criteria bearing creditworthiness; (2) verification

that consumer continues to meet the specific criteria bearing on creditworthiness; and (3) consumer furnishes any collateral required, pre-established and disclosed in the offer. 15 U.S.C. 1681A(1). The conditions contained in the letter from American are in conformance with the conditions allowed by the FCRA definition of a firm offer of credit.

On the face of the letter, there is an offer of credit in the form of a mortgage based loan. The recipient identified has been based on pre-selected criteria for a 30-year fixed rate loan. The offer is conditioned only on the continuation of the criteria used to pre-select the recipient and the verification of the collateral, in this case the equity in the home, American's offer for mortgage loans meet the statutory requirements for a firm offer of credit under the FCRA.

**B. The plaintiff's reliance on Cole is misplaced**:

As previously noted, the plaintiff's allegation in this matter with regard to the letter from American is stated in Paragraph 31 of her complaint "the sending of Exhibit A does not qualify as a firm offer of credit within the meaning of FCRA justifying the [obtention] of a consumer report on a consumer in that the purported offer, if one exists at all, is a sham, excessively vague and totally lacking in terms. It has no valid beyond the solicitation for business, the sending of which is not a permissible purpose for accessing a consumer report. Cole v. U.S. Capital, Inc., 389 F.3rd 719, 7th Cir. (2004)." (See Exhibit B) (emphasis added). By referencing the Cole matter in the complaint, the plaintiff is requesting the court move beyond the normal statutory analysis it might undertake on its own and instead rely upon the analysis in the decision from the 7th Circuit. While obviously the Cole decision

is not binding or precedential on the United States District Court from Rhode Island, there is also some concern in relying on it for guidance in the case before the court.

Cole is factually different from the circumstances existing here between Dixon and American. The plaintiff in Cole received prescreened correspondence extending credit to be applied in the purchase of an automobile. The court expressed some concern that the mailing was simply an attempt to generate business for the automobile dealership rather than an offer of credit. "Cole, therefore, holds that the offer is nothing more than an effort to pump up some product--in Cole the solicitation was really in an effort to sell cars, not credit --then it is not a firm offer of credit." Bonner v. Core Trust Bank N.A., U.S. 2006, U.S. Dist. LEXIS 47410 (N.D. Ind. July 12, 2006). "The Court found that the relatively small amount of credit guaranteed in the defendant's offer, combined with the limitation that must be used for a vehicle purchase, raised the question of whether the offer had 'value' to the consumer." Putkowski v. Irwin Home Equity Corp., 423 F.Supp.2d 1053 at 14 (N.D. Cal. 2006). In the case of American, the only offer was for credit. The only product associated with American is mortgage based lending credit. There is no attempt to tie the offer made in the letter which is the subject matter of this suit to any particular use of the money. Page 1 of the letter states "extra cash for any reason." (See Exhibit A). In Perry v. First Nat'l Bank, 459 F.3rd 816, 7th Cir. (2006), a decision by the 7th Circuit after Cole, one of the factors the court used in differentiating its finding that a firm offer of credit had

been made in Perry was that "the only product [defendant] offered was a credit line." *Id*. at 825.

**C. The application of the Cole "some value" test to the letter from American reveals that it is a firm offer of credit**:

Within the 7th Circuit, where the "some value" test developed, Cole has recently been applied to a prescreened offer from a mortgage based lender similar to the circumstances present in the case before the court. In Cavin v. Home Loan Center Inc., 2007 U.S. Dist. LEXIS 2713 (N.D. Ill, January 10, 2007) (Castillo J.), the court notes that in Cole the 7th Circuit held that an offer must have sufficient value to the consumer to be considered a firm offer of credit. "In determining whether an offer has sufficient value to the consumer, the courts must consider "the entire offer and the affect of all material conditions", including the amount of credit to be extended, whether approval is guaranteed and the terms of the offer, such as the rate of interest charged, the method of computing interest, and the length of the repayment period." *Id*. at 12, citing Cole, 889 F.3rd at 726. The Cavin court notes that Cole has been interpreted by Perry v. First Nat'l Bank, 459 F.3rd 816, 7th Cir. (2006), where the 7th Circuit identified three factors to guide courts in considering whether an offer has value (1) whether it appears likely the offer would be honored; (2) whether the material terms of the offer adequately disclose; and (3) whether the amount of credit being offered is minimal or subject to so many limitations that it is of little value. Cavin at 16, citing Perry, 459 F.3rd 824.

Weighing the factors in the case before it, the Cavin court found that the mortgage based offer before it, was a firm offer of credit under FCRA, even though

the plaintiff alleged that terms were absent. Applying the factors to American's letter, the same result is reached.

A. The loan would be honored.

The letter from American is similar to the letter in Cavin and unlike the letter in Cole (where it was not clear whether an approval was guaranteed). The letter from American clearly states on the first page that the recipient has been pre-approved (See Exhibit A, Page 1). Also similar to Cavin is the inclusion of requirements of verification. To the extent the approval is not guaranteed, a review of the mailers in their entirety show that the approval of the loan was contingent on factors that are permissible under the statute, including verification of home ownership, acceptable title, equity, income and credit (See Exhibit A, Page 2). The Cavin court noted that "unlike in Cole where it is not clear whether approval was guaranteed, the defendant mailers indicate that the recipients were pre-approved." *Id*. at 16. In addition, in the face of the plaintiff's argument that not all the terms and conditions were set out in the mailer the Cavin court notes that the "FCRA permits a firm offer of credit to be conditioned on certain requirements…and a review of the mailers in their entirety indicates approval was contingent on factors that were permissible under the statute, such as verification of income and provision of collateral." *Id*. at 17.

B. The material terms are adequately disclosed.

The mailer from American contains specific information regarding the type of credit product being offered. The loan being offered is for a 30 year period. The APR is 6.25% and the loan is offered at a fixed rate. In addition, similar to the

mailer in Cavin, the American letter offers a sample payment chart offering information on the difference in payments resulting from a consolidation of loans. In Cavin, the court notes that "unlike the mailer in Cole which provided essentially no terms…mailers contain specific information." *Id*. at 17. The Cavin court notes the existence of notations as to the adjustable rate, nature of the loan, a sample payment chart, the provision on the length of the loan for 30 years, and the indication of what additional information would be needed to obtain the loan. *Id*. at 17. In the face of the argument from the plaintiff that the precise interest rate has not been included, the court notes "we do not read Cole or Perry to require disclosure of every single loan term for an offer to be considered firm. Such a requirement poses particular difficulty in the case of a mortgage, because unlike a credit card, a mortgage is tailored to the individual consumer depending on such factors as how much he or she wishes to borrow, his or her current income, and the value of the property offered as collateral; all of this information would have to be provided by the individual borrower." *Id*. at 22.

C. The amount of credit offered was not minimal.

The Cavin court notes "unlike the offer in Cole which guaranteed only $300.00 towards the purchase of a car at a particular dealership…a first lien mortgage which depending on the value of the consumer's property, could amount to several hundred thousand dollars." *Id*. at 30, citing Cole, 389 F.3rd at 728. The court takes notice of the value in being able to make interest only payments or grace periods before the first payment as additionally offering value to an ordinary consumer.

The letter from American offers to refinance the first lien mortgage of the recipient and allows for the consolidation of other types of debt into the mortgage. As noted in Cavin, depending on the value of the consumer's property, the offer could amount to several hundred thousand dollars.

The letter also offers the ability to skip up to two mortgage payments. It also notes that up to $300.00 of appraisal fees will be refunded at closing.

D. The letter from American satisfies the "some value" test as set out in Perry and applied in Cavin.

Based on the factors noted, the Cavin court found that the mailer it was considering had sufficient value for purposes of the FCRA. The mailer from American satisfies the Cole "some value" test as has been set out in evaluation of mortgage based loans. Applying the Cole "some value" test as set out in Perry and described in Cavin, American's offer satisfies the test and is a firm offer of credit with the FCRA.

**D. Other jurisdictions have also found offers of mortgage based credit to be firm offers of credit under the FCRA**:

Federal District Courts in Florida, Missouri, and California have addressed the nature of a FCRA "firm offer of credit" in relation to prescreened offers for credit based on a mortgage on a home. Each of the District Courts noted have had an opportunity to review these mortgage based offers after the decision in Cole relied so heavily upon by the plaintiff.

In Soroka v. Homeowners' Loan Corp., 2006 U.S. Dist. LEXIS 38847 (M.D. Fla. June, 2006), the court found that even though the offer for a home loan did not include an interest rate or term on its face that "every consumer and every

lender has a common understanding that home loans are made for a definite period of time, that banks charge interest for lending money, and that interest rates are subject to change…the value of the property which secures the loan is another critical piece of information as to the amount of the loan that may extend it. This mutual understanding is inherent in the lending process as to loans secured by a consumer's home." *Id*. at 10. The court goes on to state that the omission of material terms such as interest rates, method of computing interest, and term of loan is not fatal given the facts of this case. While the terms were not disclosed on the face of the offer, the material terms were ascertainable with minimal effort. The plaintiff does not allege that the terms of the offer would not have been honored if plaintiff, Soroka satisfied defendant's criteria and had tried to accept the offer. *Id*. at 13. Finally, the court notes that the definition of firm offer of credit within FCRA contemplates an ongoing process of exchange of information and verification. *Id*. at 14.

In Putkowski v. Irwin Home Equity Corp., 423 F.Supp. 2nd 1053 (N.D. Cal. 2006), in California, the defendant offered a plaintiff a home loan with the range of $15,000.00 to $30,000.00 and stated among other things that the APR would vary from 8.65% to 16.9%. The court found that the defendant had made a firm offer of credit noting "the text of the FCRA does not support plaintiff's suggestion that a firm offer of credit cannot contain a range of credit or interest rates or that it must be of sufficient value and judged by a later arbiter as suggested by the 7th Circuit in Cole." *Id*. at 17.

In Kluthough v. G.E. Money Bank, 2007 U.S. Dist. LEXIS 3373 (E.D. Missouri January 17, 2007). The plaintiff complains the letter does not include the specific amount of credit being extended and any interest rate. *Id*. at 5. The court notes in dismissing the case "none of these terms, however, are required in order to determine whether the letter qualifies as a "firm offer of credit, under the FCRA." *Id*. at 6.

In Poehl v. Countrywide Home Loans, Inc., 2006 U.S. Dist. LEXIS 93426 (E.D. Missouri November 1, 2006), the court reviewed an offer of credit, which the plaintiffs' argued was missing terms including the interest rate. The court found that the letter was a firm offer of credit, dismissing the case noted:

> "Congress however did not specify what, if any, credit terms had to be included to be a firm offer. The statute does not say that the loan amount, interest rate or a pay back period be stated." *Id*. at 6.

and concludes:

> "Congress carefully crafted its definition of 'firm offer' and chose not to require that the lender specify particular loan terms. Instead, Congress provided a number of 'outs' for a lender, including additional pre-selection criteria, verification and collateral requirements. If Congress had wanted to require that loan amounts, interest rates or pay back terms be specified in a firm offer, it could have done so. So long as the statutory criteria are met, and so long as there is some value to the consumer so that the offer is not a slam or mere solicitation then the absence of interest rates and other terms does not prevent the offer from being a 'firm offer of credit.' *Id*. at 14.

## V. **CONCLUSION**:

The letter received by Ms. Dixon from American attached as Exhibit A to the complaint is a firm offer of credit within the definition provided in the FCRA. Looking at the American offer as a whole, it is a pre-approved offer to a specific consumer who has been identified through pre-selection criteria. The loan offer is

subject only to verification of the pre-selection criteria and the maintenance of satisfactory equity in the collateral, in this case Ms. Dixon's home.

The plaintiff's allegation that the letter is not a firm offer of credit as it does not contain every possible term regarding the offer is inconsistent with the statutory requires of the FCRA. Even absent some terms, the letter satisfies the FCRA definition of firm offer of credit. Courts reviewing the statutory definition have found that the statute "does not say the loan amount, interest rate or a pay back period be stated." Poehl at 6.

Dixon relies heavily on the Cole decision from the 7th Circuit; however, this reliance is misplaced. The circumstances between Dixon and American as well as the contents of the letter from American are distinct from the basis of the decision in Cole. First, the offer in Cole was tied to a purchase of an automobile. Here the offer by American can be used for any reason as stated on the face of the letter. Second, the offer in Cole was not guaranteed, where here the American offer is pre-approved as noted on Page 1 of the letter.

Even if the court were to accept the guidance of the 7th Circuit and apply Cole, the letter from American passes the Cole "some value" test. The recent Cavin decision applying Perry follows the trend in finding that cases involving letters offering credit based on home mortgage can be differentiated from other types of offers including those regarding credit cards or automobile loans. The terms in a mortgage based offer include the value of the home and the equity of the recipient in the home which cannot be determined in the limited pre-selection process. The Cavin court applying the Cole and Perry factors find that an offer for

a home based loan which is missing terms on the face of the letter has value to the consumer. The factors applied by the Cavin court are also satisfied by the American letter to Dixon and the American letter would have value and be a firm offer of credit under the FCRA even if Cole and its progeny were to be applied.

After the Cole decision in the 7th Circuit was decided, several district courts around the country have had opportunities to evaluate letters and offers where the plaintiff has alleged terms were missing and as a result, the correspondence was not a firm offer of credit. When presented with offers similar to the one which is the subject matter of this action, the court has found that the presence of missing terms on the face of the letter would not disqualify the offer from being a firm offer of credit under the FCRA. The courts have reached this decision by either applying the FCRA statute directly or considering the factors set out by the Cole court. In either circumstance, they reached the same conclusion, that is that the FCRA does not require an offer to have each and every term set out in the correspondence in order to qualify as a firm offer of credit under the FCRA.

For the reasons stated, American moves this court to grant its motion for summary judgment.

/s/ Thomas J. Cronin
Thomas J. Cronin (#5302)
Attorney for Defendant
GUNNING & LAFAZIA, INC.
56 Pine Street
Providence, RI 02903
Telephone #: (401) 521-6900
Fax #: (401) 521-6901
Direct Dial #: (401) 521-7977

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing memorandum in support of motion for summary judgment was filed with the Clerk of the United States District Court for the District of Rhode Island this 28th day of February, 2007, and is available for viewing and downloading to the following ECF registered counsel of record:

Christopher M. Lefebvre, Esq.
Scott C. Borison, Esq.
Thomas A. Tarro, III, Esq.

/s/ Thomas J. Cronin______________________

# EXHIBIT A

To: Page 61 of 64 2006-11-10 16:18:25 (GMT) 18667675664 From: Rhoda Bundy-Hill

11/06/2006 03:50 4012313310 UNIVERSAL INSURANCE

YOU COULD SAVE THOUSANDS BY MAKING A SINGLE CALL

*American Money Centers, inc.*

141 James P. Murphy Highway
West Warwick, RI 02893

Cynthia Dixon
141 Pinecrest Dr
Pawtucket, RI 02861-1578

IMAGINE 1 PAYMENT FOR ALL YOUR BILLS BY MAKING 1 SIMPLE CALL

APPROVED STATUS NUMBER
1022081706

Dear Cynthia,

Our research indicates you have built up enough equity in your house, along with your payment history, to consolidate all your bills into 1 single payment that could save you thousands.

You have already been pre-approved, and with interest rates still at historic lows, it's time to take advantage of this tremendous savings opportunity today!

## 3 EASY STEPS AND YOU'LL BE ON YOUR WAY...

1. MAKE 1 SIMPLE CALL 1-800-993-5200 TOLL-FREE
   – It only takes 2 minutes –
2. RECEIVE YOUR PRE-APPROVAL IN 30 MINUTES OR LESS
   – We make borrowing easy –
3. WE'LL CLOSE YOUR LOAN IN AS LITTLE AS 10 DAYS
   – If you choose, we will come right to your home –

FREE APPRAISAL REPORT!

## BENEFITS YOU WILL RECEIVE

- Pay only 1 bill each month
- No out-of-pocket closing costs
- Skip up to 2 mortgage payments
- Pay off high interest credit cards
- Extra cash for any reason
- Get a tax deduction**
- Receive a free payment analysis

EXAMPLE

| Current Bills | Current Balance | Current Payment | YOUR NEW AMC LOAN |
|---|---|---|---|
| Mortgage | $ 132,000.00 | $ 907.00 | 1 LOW PAYMENT OF $1,406*** |
| Equity Loan | $ 22,500.00 | $ 241.00 | |
| Credit Cards | $ 18,500.00 | $ 592.00 | |
| Store Charges | $ 6,200.00 | $ 198.00 | |
| Auto (other) | $ 14,600.00 | $ 438.00 | |
| TOTAL | $ 193,800.00 | $ 2,376.00 | |

YOU SAVE $970 EACH MONTH WITH YEARLY SAVINGS OF $11,640

ou can choose to stop receiving "prescreened" offers of credit from this and other companies by calling ll free 1-888-567-8688. See PRESECREEN & OPT-OUT NOTICE on the back side for more information out prescreened offers.

)3

## IT JUST DOESN'T GET ANY EASIER THAN THIS !

- When you call you will speak to one of our knowledgeable mortgage specialists who will explain in detail, what your options are, and what benefits you the most.
- Within 24 hours you will also receive your own personal payment analysis showing you exactly how much you will save.
- Because we have closing offices throughout the country, you can close in as little as 10 days, and if you choose, for your convenience, we will come right to your home and close your loan.
- From start to finish, we do all the paperwork for you. At AMC, there is never any application fee or obligation whatsoever.

**No matter what the situation** whether it's credit problems, employment issues, or even no employment at all, AMC is a leading lender in your community and has all the resources to meet your individual needs.

**YOU MAY ALSO APPLY ONLINE AT americanmoneycenters.com**

**We believe in old fashioned customer service** and we'll work diligently to earn your confidence and put you in the best possible financial situation. So make this 2 minute toll free call **1-800-993-5200** and start saving now.

Sincerely,

P.S
Jim Douglas
Vice President

*P.S. Don't wait until interest rates rise more, the time is NOW. Make this call and receive your*




* Appraisal refund up to $300 on closed first mortgage loans only. ** Home loan interest is typically tax-deductible. Consult your tax advisor for further information. *** Payment based on a 30 year $193,800 loan amount with a fixed rate and an APR of 6.25%. This is a rate that was recently offered and may or may not reflect the interest rate on which loans are currently closed. Loan approval subject to borrower qualification, verification of homeownership, acceptable title, equity, income, and credit.

**PRESECREEN & OPT-OUT NOTICE**

This "prescreened" offer of credit is based on information in your credit report indicating that you meet certain criteria. This offer is not guaranteed if you do not meet our criteria (including providing acceptable property collateral). If you do not want to receive prescreened offers of credit from this and other companies, call the consumer reporting agencies toll free at 1-888-5-OPT-OUT (1-888-567-8688) or write: Transunion, Name Removal Option, P.O. Box 97328, Jackson, MS 39288 • Experian Consumer OPT-OUT, 901 West Bond, Lincoln, NE 68521 • Equifax Options, P.O. Box 740123, Atlanta, GA 30374-0123

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| CYNTHIA A. DIXON<br>Plaintiff,<br><br>v.<br><br>AMERICAN MONEY CENTERS INC.<br>Defendant | )<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 06-443 |

COMPLAINT - CLASS ACTION

INTRODUCTION

1. Plaintiff Cynthia A. Dixon brings this action to secure redress for a course

of conduct that included the accessing of a consumer report of the plaintiff and numerous other

residents of Rhode Island, Massachusetts, Maine and New Hampshire without plaintiff's consent

or any lawful reason, in violation of the Fair Credit Reporting Act, 15 U.S.C. §1681 et seq.

("FCRA").

JURISDICTION AND VENUE

2. This Court has jurisdiction under 28 U.S.C. §§1331 and 1337 and 15

U.S.C. §1681p ('FCRA').

3. Venue in this District is proper in that defendant does business in this

District.

LOCAL RULE 23 CLASS ACTION ALLEGATIONS

4. This claim is brought under Federal Rule 23(b)(3) on behalf of a class,

consisting of (a) all persons with Rhode Island, Massachusetts, Maine and New Hampshire

addresses (b) to whom defendant sent or caused to be sent material in the form represented by

Exhibit A (c). Persons who responded to the material and obtained credit as a result of such

response are excluded.

5. The class is so numerous that joinder of all members is impracticable. It is

estimated that the class is composed. of several thousand individuals. (The precise number of

class individuals will be ascertained during discovery.)

6. Since Exhibit A is a form document, there *are* questions of law and fact

common to the class, which questions predominate over any questions affecting only individual

class members. The predominant common question is whether obtaining a consumer report for

the purpose of transmission of the material in Exhibit A violates the FCRA. Plaintiff s claims

are typical of the claims of the class members. All are based on the same legal and factual issues.

7. Plaintiff will fairly and adequately represent the members of the class. Plaintiff is aware her responsibilities as named class representative and have the ability and willingness to carry out those duties to protect each member of the putative class in accordance with judicial precedent interpreting the requirements for adequacy of a class representative. Furthermore, Plaintiff has retained counsel experienced in the prosecution of similar claims.

PARTIES

8. Plaintiff Cynthia A. Dixon is an individual who resides in Pawtucket,

Rhode Island.

9. Defendant American Money Centers Inc.. (hereinafter "American") is a corporation under the laws of Rhode Island with headquarters in 141 James P. Murphy Highway, West Warwick R.I. 02893. Upon information and belief, the defendant is a licensed lender in Rhode Island, Massachusetts, Maine and New Hampshire.

FACTS

10. During the two years preceding the filing of this action, plaintiff Cynthia A Dixon received the document attached as Exhibits A via the United States mail.

11. Exhibit A states: "This 'prescreened' offer of credit is based on information in your credit report.. . . ."

12. On information and belief, the quoted statement is true.

13. On information and belief, defendant engaged in or arranged for the "prescreening" of consumers based on information in consumer reports held by a consumer reporting agency.

14. Based on the results of such "prescreening, defendant sent or caused to be sent mailers in the form represented by Exhibit A to numerous consumers, including the plaintiff.

15. "Prescreening" is usually performed by "data brokers" or "information brokers"' who access consumer report information. By causing data brokers to handle credit information, defendant subjects consumers to an increased risk of improper disclosure and identity theft. See M. Frank, "Privacy Laws and Data Broker Services," Congressional Testimony, May 1O, 2005, Federal Document Clearing House ("data brokers" that perform pre-screening services are inviting targets for identity thieves and have been the subject of several recent incidents of such theft).

16. Exhibit A is an example of a printed form document.

17. Exhibit A contains the trademarks and commercial symbols of American.

18. On information and belief, defendant American approved and authorized the

dissemination of material in the form represented by Exhibit A by defendant American.

19. The response telephone numbers and mail address on Exhibit A are used by defendant American.

20. On information and belief, defendant American obtained business as a result of the dissemination of mailers in the form represented by Exhibit A.

21. On information and belief, more than 200 mailers in the form represented by Exhibit A were sent to residents of Rhode Island, Massachusetts, Maine and New Hampshire.

22. Plaintiff Cynthia A. Dixon had not authorized defendant to access or use plaintiff's consumer report.

23. Defendant had no reason to believe that plaintiff Dixon had authorized defendant or defendant's agents to access plaintiff's consumer report or use information therein.

24. Plaintiff Cynthia A. Dixon did not initiate any transaction with defendant.

25. The FCRA, 15 V.S. C. § 1681 a(d), defines "consumer report" as follows:

The term" consumer report means any written, oral or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for--

(A) credit or insurance to be used primarily for personal, family, or household purposes; . . .

26. The FCRA, 15 U.S.C §1681a(f) defines "consumer reporting agency" as:

[A]ny person which for monetary fees, dues, or on a cooperative nonprofit basis1 regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the, purpose of preparing or furnishing consumer reports.

27. The FCRA 15 U.S.C. § 16810, provides it is permissible to obtain or use a consumer report on a consumer only with the written consent of the consumer or for certain "permissible purposes," such as the extension of credit to, or review or collection of an account of, the consumer, employment purposes, the underwriting of insurance, or in connection with a business transaction that is initiated by the consumer or to make a "firm offer of credit."

28. The requester must certify to the consumer reporting agency that a permissible purpose exists.

29. As noted, one "permissible purpose" is to extend a firm offer of credit or insurance to the consumer even where this has not been requested by the consumer.

30. The sending of the material in Exhibit A does not constitute a permissible reason for anyone to access plaintiff's consumer report without plaintiff's consent.

31. The sending of Exhibit A does not qualify as a :firm offer of credit" within the meaning of the FCRA, justifying the obtention of a consumer report on a consumer, in that the purported offer (if one exists at all) is a sham , excessively vague and totally lacking in terms. It has no value beyond a solicitation for business, the sending of which is not a permissible purpose for accessing a consumer report. Cole v. U.S. Capital, Inc., 389 F.3d 719 (7th Cir. 2004).

VIOLATION ALLEGED

32. Defendant obtained or used, or caused to be obtained or used, the consumer report of plaintiff Dixon and every other person to whom Exhibit A were sent without their written permission or a "permissible purpose.'"

33. Defendant willfully violated the FCRA.

34. The FCRA, 15 D.S.C. §l681, provides:

§1681n. Civil liability for willful noncompliance

(a) In general. Any person who willfully fails to comply with any requirement imposed under this title [15 use §§1681 et seq.} with respect to any consumer is liable to that consumer in an amount equal to the sum of --

(1)(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or

(B) in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $1,000, whichever is greater;

(2) such amount of punitive damages as the court may allow; and

(3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court. . . .

35. The FCRA, 15 U.S.C. § 1681p, provides:

§1681p. Jurisdiction of courts; limitation of actions

An action to enforce any liability created under this title [15 USC §§1681 et seq.] may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court *of* competent jurisdiction, within two years from the date on which the liability arises, except that where a defendant has materially and willfully misrepresented any information required under this title [15 USC §§1681 et seq.] to be disclosed to au individual and the information so misrepresented is material

to the establishment of the defendant's liability to that individual under this title [15 USC §§1681 et seq.], the action may be brought at any time within *two* years after discovery by the individual of the misrepresentation.

CLASS ALLEGATIONS

36. This claim is brought on behalf of a class, consisting of (a) all persons with Rhode Island, Massachusetts, Maine and New Hampshire addresses (b) to whom defendant sent or caused to be sent material in the form represent6d by Exhibit A (c) on or after a date two years prior to the filing of this action. Persons who responded to the material and obtained credit as a result of such response are excluded.

37. According to Exhibit A, the consumer report of each such individuals were accessed.

38. The class is so numerous that joinder of all members is impracticable.

39. Exhibit A is a form document.

40. There are questions of law and fact common to the class which questions predominate over any questions affecting only individual class members. The predominant common question is whether obtaining a consumer report for the purpose of transmission of the material in Exhibit A violates the FCRA.

41. Plaintiffs claims are typical *of* the claims of the class members. All are based on the same legal and factual issues.

42. Plaintiff will fairly and adequately represent the members of the class. Plaintiff has retained counsel experienced in the prosecution of similar claims.

43. A class action is superior for the fair and efficient prosecution of this litigation. Classwide liability is essential to cause defendant to stop its improper conduct. Many class members may be unaware that they have been victims of illegal conduct.

WHEREFORE, plaintiff requests that the Court enter judgment in plaintiffs favor and in favor of the class for:

a. Appropriate statutory damages;
b. Injunctive relief against further violations;
c. Attorney's fees, litigation expenses and costs of suit;
d. Such other or further relief as is appropriate.

Respectfully submitted;

Christopher M. Lefebvre #4019
CLAUDE F. LEFEBVRE AND
CHRISTOPHER M. LEFEBVRE, P.C.
Two Dexter Street
Pawtucket, RI 02860
P.O. Box 479 (Mailing address)
Pawtucket, RI 02862
(401) 728-6060
(401) 728-6534 (fax)
lefeblaw@ao1.com

**Of Counsel:**
Scott C. Borison
Bar No. 22576
Legg Law Firm, LLC
5500 Buckeystown Pike
Frederick, MD 21703
Borison@legglaw.com
(301) 620-1010
(301) 620-1018 Fax

**JURY DEMAND**

Plaintiff demands trial by jury.

Christopher M. Lefebvre

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| CYNTHIA A. DIXON | : | |
| VS | : | C.A. NO.: 06-443 |
| AMERICAN MONEY CENTERS INC. | : : | |

**AFFIDAVIT OF KENNETH COSCELLA**

Now comes Kenneth Coscella and makes affidavit under oath and says the following:

1. I, Kenneth Coscella, am the President of American Money Centers, Inc. of West Warwick, Rhode Island.

2. I have personal knowledge regarding the document attached as Exhibit A to the complaint in this matter and the operation of American Money Centers Inc.

3. American Money Centers Inc. is a Rhode Island mortgage based lending company.

4. The document attached as Exhibit A to the complaint in this matter was mailed by American Money Centers Inc. to Cynthia Dixon on August 17, 2006.

5. The document is an offer to refinance a mortgage of a home owned by the recipient.

6. The only product or service of American Money Centers, Inc. is mortgage based loans.

________________________________
Kenneth Coscella

Subscribed and sworn to before me on this _______ day of February, 2007.

________________________________
Notary Public
My Commission Expires:_________________

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing affidavit of Kenneth Coscella was filed with the Clerk of the United States District Court for the District of Rhode Island this 28th day of February, 2007, and is available for viewing and downloading to the following ECF registered counsel of record:

Christopher M. Lefebvre, Esq.
Scott C. Borison, Esq.
Thomas A. Tarro, III, Esq.

/s/ Thomas J. Cronin____________________